IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02840-MSK-MEH

ASA MEEK,

      Plaintiff,

v.

TOM CLEMENTS, Executive Dir.,
ARISTEDES ZAVARAS, old Ex. Dir.,
KEVIN MILYARD, Warden,
CAPTAIN BROOKS, Kitchen Supervisor,
LT. FICUS, Old Kitchen Supervisor
CATHERINE HOLST, AIC Coordinator,
PAULA FRANTZ, CDOC Chief Medical Officer,
DIAZ, Transport Officer,
MERRELL, Transport Officer, 1ˢᵗ Responders Jane and John Does,
BEVERLY DOWIS, Health Service Administrator, John and Jane Doe Doctors, John and Jane
Doe Physician Assistants, John and Jane Doe Nurses,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

      Before the Court is Defendants' Motion to Dismiss [filed February 21, 2012; docket #39].

The motion is referred to this Court for recommendation.  (Docket #41.)  Oral argument would not

materially assist the Court in its adjudication.  For the reasons that follow, the Court respectfully

recommends that the District Court **GRANT** the motion to dismiss.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file
any written objections in order to obtain reconsideration by the District Judge to whom this case is
assigned.  Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings
or recommendations to which the objections are being made.  The District Court need not consider
frivolous, conclusive or general objections.  A party's failure to file such written objections to
proposed findings and recommendations contained in this report may bar the party from a de novo

## BACKGROUND

### I.    Procedural History

On October 31, 2011, Plaintiff, an inmate proceeding *pro se*, initiated this action pursuant to 42 U.S.C. § 1983 by filing a "Prisoner Complaint."  (Docket # 1.)  On January 24, 2012, Plaintiff filed a motion for leave to file a first amended complaint; however, Defendants had not yet filed an answer or other response to the original complaint.  Thus, pursuant to Fed. R. Civ. P. 15(a), the Court denied the motion as moot and entered the First Amended Complaint on the docket.  (*See* dockets #30 and #31.)  Plaintiff seeks compensatory and punitive damages, as well as injunctive relief, from Defendants for allegedly having acted with deliberate indifference to a substantial risk to his safety and to his serious medical needs in violation of the Eighth Amendment, and for violating Title II of the Americans with Disabilities Act ("ADA") in refusing to follow another facility doctor's order to provide Plaintiff with assistive devices for his alleged disabilities.  (Docket #31.)

On February 21, 2012, Defendants filed the present motion to dismiss Plaintiff's claims asserting that they are entitled to Eleventh Amendment immunity for any official-capacity claims, and to qualified immunity for individual capacity claims because the Plaintiff has failed to plausibly allege their personal participation or that they violated the Eighth Amendment.  *Id.*  In addition, Defendants contend that portions of the Plaintiff's Eighth Amendment and ADA claims are barred

---

determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

by the statute of limitations.  On March 15, 2012, Plaintiff filed a response to Defendants' motion arguing essentially that the question whether the statute of limitations applies requires discovery, that the Eleventh Amendment does not apply to Defendants in their personal capacity, that the Colorado Governmental Immunity Act does not apply, that Defendants fail to disclaim any fault or liability for Plaintiff's injuries, that the motion reads more like an answer and the case should proceed to discovery, and that the alleged facts should be taken as true.  (Docket #47.)  Defendants filed a reply brief in support of the motion on March 30, 2012 essentially repeating their original arguments and refuting Plaintiff's attempt to add factual allegations through his response brief. (Docket #49.)

## II.    Statement of Facts

The following are factual allegations (as opposed to legal conclusions, bare assertions or merely conclusory allegations) made by the Plaintiff (or construed liberally) in the First Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court must limit its review to the four corners of the complaint, but may also consider documents attached to the complaint as exhibits, *Oxendine v. Kaplan,* 241 F.3d 1272, 1275 (10th Cir. 2001), as well as unattached documents which are referred to in the complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed. *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam,* 261 F.3d 956, 961 (10th Cir. 2001).

The Plaintiff suffers from low back pain, a speech impediment and a hearing disability.[2]  On

_____

[2]The Plaintiff points to an "Active Problem List" listing nine medical ailments from April 2000 - March 2008 for evidence of "sufficiently serious medical issues"; however, the Court cannot perceive how a chronic airway obstruction from tobacco use in February 2007, or the unspecified

December 27, 2006, while Plaintiff was housed at the Kit Carson Correctional Center, Plaintiff was ordered an extra mattress by medical staff for a period of one year.  Thereafter, on January 18, 2008, Plaintiff was ordered a wedge pillow for a period of one year, and on February 1, 2007, he was ordered a back brace for a period of one year.  Plaintiff was transferred to Sterling Correctional Facility (SCF) on February 22, 2007.  Plaintiff filed a grievance claiming that SCF staff confiscated the mattress, pillow and brace and told Plaintiff he was not authorized to have the items.  The back brace was subsequently authorized on March 6, 2007, but Plaintiff was denied the wedge pillow and extra mattress.

In or about 2010, the Plaintiff had been assigned half-time to academic classes, but was removed for "lack of progress" and reassigned to work full-time in the kitchen.  Defendants Ficus and Brooks were Plaintiff's supervisors in the kitchen.  Plaintiff repeatedly complained about the wet floors in the kitchen, but received no response.  On July 1, 2010, Plaintiff slipped on a wet floor and fractured his right hip.  He laid on the wet floor for more than fifteen minutes until the first responders arrived.  They transported Plaintiff to medical in a wheelchair, during which he suffered a great deal of pain.

After medical staff determined Plaintiff required outside medical care, Defendants Merrill and Diaz transported Plaintiff in a wheelchair to the release department and changed his green prison clothes to an orange jumpsuit.  In addition, the Defendants "slammed" an orange boot on the Plaintiff's right ankle, which was swollen due to the injury to his right hip.  Plaintiff suffered a great deal of pain during this process.

---

anemia, eyebrow laceration, and impacted ear wax on March 12, 2008 relate in any way to the allegations made in the Amended Complaint.  *See* Docket #1 at 36.

Defendants Merrell and Diaz then transported Plaintiff, handcuffed and in a wheelchair, to Sterling Regional Medical Center.  After Sterling's medical staff  determined Plaintiff's fracture, Defendants Merrill and Diaz transported Plaintiff, handcuffed and in a wheelchair, to the Denver Health Medical Center.  During these transports, Plaintiff suffered severe pain.

On July 2, 2010, Plaintiff underwent an operative procedure to repair the right hip fracture. According to the operative report, Plaintiff "tolerated the procedure well and left the operating room in good condition."

## LEGAL STANDARDS

### I.      Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  A court lacking jurisdiction "must dismiss the cause *at any stage* of the proceeding in which it becomes apparent that jurisdiction is lacking."  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (emphasis in original).  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *See Basso*, 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims.  Further, under a 12(b)(1) motion, "a court has 'wide discretion to allow

affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)).  In such an instance, "a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion." *Id.*

## II.    Dismissal under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis.  First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory.  *Id.* at 678-80.  Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)).  "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011).  Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a

complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191 .

III.     **Treatment of a Pro Se Plaintiff's Complaint**

A federal court must construe a pro se plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id*. Accordingly, the court must "not supply additional facts, nor ... construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

<u>**ANALYSIS**</u>

I.     **Sovereign Immunity**

Claims against state officials in their official capacities are essentially claims against the state entity. *Ky. v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted). It is well-established that "the Eleventh Amendment precludes

a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994). Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies. *Blatchford v. Native Village of Noatak & Circle Village*, 501 U.S. 775, 785-86 (1991). Thus, an official-capacity lawsuit is appropriate only where the claims could be sustained against the entity in its own name. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

The Supreme Court has recognized an exception to the Eleventh Amendment for such actions where a plaintiff is seeking prospective enforcement of his or her federal rights. *See Ex parte Young*, 209 U.S. 123, 159-60 (1908). But *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past" or as a means for seeking money damages. *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

Here, Plaintiff alleges in his Amended Complaint that he seeks both monetary damages and injunctive relief. His request for injunction states: "To stop putting at risk adults, ADA inmates in unsafe and unhealthy condition in the kitchen. To ensure all inmates have a thorough physical examination prior to work in kitchen and have that Dr. - PA - nurse [sic] and hold that provider responsible for food handlers certificates." While the Plaintiff's request may be prospective in nature, he seeks relief on behalf of inmates other than himself, which he is not allowed to do. *See Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others."). Therefore, the Court

finds that Plaintiff's claims do not fall under the *Young* exception to sovereign immunity under the Eleventh Amendment.  Accordingly, this Court has no jurisdiction to hear the Plaintiff's claims against Defendants in their official capacities, and the Court respectfully recommends that the District Court grant the Defendants' motion to dismiss such claims.

## II.    Qualified Immunity

Defendants also assert that they are entitled to qualified immunity on the claims against them in their individual capacities. Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "It is an entitlement not to stand trial or face the other burdens of litigation." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted).  "The privilege is an immunity from suit rather than a mere defense to liability." *Id.*

Qualified immunity is designed to shield public officials and ensure "that erroneous suits do not even go to trial." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 779 (10th Cir. 1993) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow*, 457 U.S. at 806-08 (1982); *Pueblo Neighborhood Health Ctrs. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988)).  Consequently, courts should address the qualified immunity defense at the earliest possible stage in litigation.  *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995); *Medina v. Cram*, 252 F.3d 1124, 1127-28 (10th Cir. 2001).

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity.  *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged

unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)).

The Supreme Court has discarded a review process that required courts to examine these questions sequentially, first considering whether a right had been violated, and then second – if the court concluded a right had been violated – whether that right was clearly established at the time of the alleged violation. *Pearson*, 129 S. Ct. at 816-22. *Pearson* retired this process, instead affording courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Here, for Plaintiff's claims pursuant to 42 U.S.C. § 1983, the Court examines first whether Plaintiff has demonstrated on the alleged facts that Defendants violated his constitutional rights.  In addition, the Court must determine whether Plaintiff has demonstrated on alleged facts that Defendants committed a statutory violation.  If the Court finds that a right was violated, the Court will then proceed to analyze whether Plaintiff's statutory or constitutional right was clearly established at the time of the alleged conduct.

A.    Constitutional Violations

The Court begins with an analysis whether Plaintiff sufficiently alleges his Eighth Amendment and due process rights were violated and whether Defendants can be found individually liable for a violation under § 1983.  Although not clearly stated in his Amended Complaint, the Plaintiff alleges for his Claim One that "Defs Brooks, Ficus, Zavares, Clements, Paula Frantz, and Dowis disregarded a substantial risk of harm to not only plaintiff's health, but plaintiff's safety too." Docket #31 at 15.  It appears that the Plaintiff focuses in Claim One on his allegations that he, a person with various medical conditions, should not have been exposed to hazardous conditions in the kitchen where he fell and broke his hip.  *Id.* at 15-118, Docket #31-1 at 1-2.  For his Claim

Three, Plaintiff appears to allege first that Defendant Milyard violated his due process rights in requiring that Plaintiff take a GED class although the Plaintiff had already completed the program while serving in the U.S. army.  Docket #31-1 at 6-7.  Plaintiff also alleges that Defendants Merrell and Diaz improperly subjected him to cruel and unusual punishment by transporting him in a wheelchair and changing him into an orange jumpsuit just after he broke his hip.  *Id.* at 7-8.  To establish a violation, the Plaintiff must sufficiently allege that (1) Defendants personally participated in the challenged actions, and (2) they were deliberately indifferent to a substantial risk of serious harm arising from their actions.

### 1.  *Personal Participation*

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."  *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997).  Thus, there must be an affirmative link between actions taken by a defendant and any plan or policy put into effect that violates a plaintiff's constitutional rights.  *Dodds v. Richardson*, 614 F.3d 1185, 1200-01 (10th Cir. 2010).

Supervisory status alone does not create § 1983 liability.  *Duffield v. Jackson,* 545 F.3d 1234, 1239 (10th Cir. 2008).  Rather, liability of a supervisor under § 1983 requires "allegations of personal direction or of actual knowledge and acquiescence."  *Langley v. Adams County, Colo.*, 987 F.2d 1473, 1481 (10th Cir. 1993) (cited with approval in *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997)).  Thus, there must be "an affirmative link ... between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise."  *Green,* 108 F.3d at 1302 (quotation and brackets omitted).  In other words, the Section 1983 liability is properly imposed "upon individual defendants who act with the requisite degree of culpability to promulgate, create, implement, or otherwise possess responsibility for the continued operation of policies that cause the deprivation of persons' federally protected rights."  *Dodds*, 614

F.3d at 1201.

Plaintiff's allegations concerning Defendants Zavares, former Executive Director for the Colorado Department of Corrections (CDOC), Clements, current Executive Director for the CDOC, Frantz, CDOC Chief Medical Officer, and Dowis, Health Services Administrator, do not reflect any personal direction or actual knowledge of the conduct of which Plaintiff complains.  Plaintiff's unclear and conclusory allegations that Zavares and Clements are responsible for their policy concerning "adequate protection for all offenders," and that Dowis and Frantz are responsible for "food handlers certificates" do not demonstrate an affirmative link to his specific Eighth Amendment claims.  The Plaintiff does not allege that any of these managers personally directed kitchen or medical staff to place Plaintiff in an unsafe condition, or that the managers even knew of such placement.  Likewise, Plaintiff fails to allege that any of these Defendants instituted or are responsible for a policy, custom or practice that violated his constitutional rights.

Moreover, the Plaintiff alleges that Kevin Milyard, Warden at SCF, "through his policy, custom and or administration regulation 850-3 violated plaintiff Meek [sic] due process rights in failing to ensure that plaintiff Meek [sic] assignment to take SCF GED class over again, after the U.S. army shows on plaintiff's DD214 discharge papers that Meek already graduated and was given a GED certificate in 1966."  Docket #31-1 at 6-7.  These allegations are vague; the Court assumes that Plaintiff is complaining about a requirement to take a GED class at SCF, but he describes no personal participation by the warden (except in the implementation of a policy he does not challenge) and identifies no date of injury and, in fact, no injury at all.[3]  The Court need not accept these allegations as true.  *Iqbal*, 556 U.S. 662, 678-80.  Because the Plaintiff fails to identify any

---

[3]The Court notes also that, although not determinative, the Plaintiff fails (unlike with his other claims) to provide information concerning the administrative grievances he filed regarding this claim.

personal participation on the part of Warden Milyard in any constitutional violation, he has failed to state a claim against the warden.  Accordingly, the Court recommends finding the Plaintiff has failed to allege sufficient facts showing personal participation by Defendants Zavares, Clements, Frantz, Dowis and Milyard.

On the other hand, the Court finds Plaintiff sufficiently alleges personal participation by Defendants Brooks and Ficus (kitchen supervisors), and Diaz and Merrell (transport officers).  Regarding Brooks and Ficus, Plaintiff alleges that by their daily observations and supervision of his work in the kitchen, they placed Plaintiff, an individual with back problems and a hearing disability, in an unsafe condition in the kitchen.  Docket #31 at 17.  Furthermore, Plaintiff alleges that, in the hours after he broke his hip, Defendants Merrill and Diaz forcefully changed the Plaintiff into an orange jumpsuit, jammed an orange boot on Plaintiff's foot below his broken hip, and personally transported Plaintiff in a wheelchair sitting straight up on bumpy roads to the Sterling and Denver hospitals.  These allegations demonstrate personal involvement in the alleged constitutional violations.  Therefore, the Court will proceed to analyze whether Plaintiff states plausible claims for relief against Defendants Brooks, Ficus, Diaz and Merrell.

### 2. *Deliberate Indifference to Substantial Risk of Serious Harm*

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'"  *Penrod v. Zavaras,* 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  Accordingly, prison officials must "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and ... tak[e] reasonable measures to guarantee the inmates' safety."  *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir. 1998) (citing *Farmer v. Brennan,* 511 U.S. 825, 832-33 (1994)).

A prisoner states a claim of cruel and unusual punishment under the Eighth Amendment for

improper medical care by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Estelle*, 429 U.S. at 105.

To establish a cognizable "conditions of confinement" claim under the Eighth Amendment, an inmate must show that the condition complained of is "sufficiently serious" to implicate constitutional protection, the objective component, and that the prison official acted with deliberate indifference to the inmate's health or safety, the subjective component. *Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004) (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001)).

Plaintiff must meet both the objective and subjective components constituting the test for deliberate indifference. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id.* (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006), overruled on other grounds by *Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008)). The Tenth Circuit established "a medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Horton v. Ward*, 123 F. App'x 368, 371 (10th Cir. 2005) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 2005)).

The subjective component is met if the plaintiff demonstrates defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer*, 511 U.S.

14

at 838).  This component is equivalent to "criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of harm." *Beauclair v. Graves*, 227 F. App'x 773, 776 (10th Cir. 2007) (quoting *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005)).  "A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of [the] condition." *Mata*, 427 F.3d at 755.  However, "a delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm.'" *Mata*, 427 F.3d at 751 (citing *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)).  Substantial harm includes "lifelong handicap, permanent loss, or considerable pain." *Garett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

The Court will analyze each claim to determine whether the Plaintiff has plausibly pled violations of the Eighth Amendment for failure to protect and for failure to provide adequate medical care.

a.      Claim One: Conditions of Confinement

For Plaintiff's Claim One, he alleges Defendants Ficus and Brooks subjected him to a substantial risk of harm by exposing him to hazardous conditions in the kitchen (wet, slippery floors) where he fell and broke his hip.  The objective component is met if Plaintiff alleges the wet floors "rose to the level of [a] 'condition posing a substantial risk of serious harm' to inmate health or safety." *Reynolds*, 370 F.3d at 1031 (quoting *DeSpain*, 264 F.3d at 973).  "A 'slip and fall,' without more, does not amount to cruel and unusual punishment." *Id.*  Thus, the Plaintiff must allege sufficiently special or unique circumstances that would require a departure from the general rule barring Eighth Amendment liability in prison slip and fall cases. *Id.* at 1032.

Here, Plaintiff alleges he suffers low back pain, hearing loss and a speech impediment. Plaintiff asserts that, despite these ailments, he was removed from education classes and assigned to work full-time in the kitchen.  Plaintiff states that, although Defendants Brooks and Ficus

15

observed his ailments and although he complained about slippery, wet floors in the kitchen, no one responded or removed him from the conditions. Then, on July 1, 2010, the Plaintiff slipped on a wet floor in the kitchen and broke his hip. Taking these allegations as true, the Court finds that Plaintiff fails to allege a plausible Eighth Amendment claim.

In *Reynolds*, the plaintiff inmate complained that he suffered significant injuries to his head, neck and back when he slipped on wet floors in the shower area of the prison. *Id.* at 1030. He asserted that he warned the Defendants of the wet floors several times before he fell, and that he was at significant risk of falling because a previous injury required the plaintiff to use crutches. *Id.* Likewise, here, Plaintiff alleges he was at risk of falling due to his age, lower back pain and possibly, his hearing loss. However, as in *Reynolds*, the Plaintiff here obviously knew about the wet floors before he fell, because he had repeatedly complained about them, and he had tread on the same wet floors safely during those times prior to his fall. Thus, the hazard encountered by the Plaintiff was "no greater than the daily hazards faced by any member of the general public" who may be elderly with hearing loss and back problems, "and that there is nothing special or unique about [Plaintiff's] situation that will permit him to constitutionalize what is otherwise only a state-law tort claim." *Id.* at 1032. Therefore, the Court recommends finding that Plaintiff has not sufficiently alleged in Claim One the objective portion of a "conditions of confinement" violation of the Eighth Amendment.

b.      Claim Three: Failure to Provide Adequate Medical Care

For Claim Three, the Plaintiff alleges Defendants Diaz and Merrill subjected him to a substantial risk of harm by exposing him to significant pain in the hours after he broke his hip. Clearly, the Plaintiff meets the objective component of an Eighth Amendment claim; there is no dispute that Plaintiff's broken hip is a medical need sufficiently serious to implicate the cruel and unusual punishment clause. *See Horton v. Ward*, 123 F. App'x at 371 ("a medical need is

sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'").

To meet the subjective component, a plaintiff must demonstrate defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer*, 511 U.S. at 838). This component is equivalent to "criminal recklessness, which makes a person liable when she [or he] consciously disregards a substantial risk of harm." *Beauclair v. Graves*, 227 F. App'x 773, 776 (10th Cir. 2007) (unpublished) (quoting *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005)). "Deliberate indifference requires more than a showing of simple or heightened negligence." *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003). A plaintiff "must do more than establish that [the defendant] should have known of the risk of harm." *Id.* He "[m]ust present evidence supporting an inference that [the defendant] actually knew about a substantial risk of serious harm to his safety." *Id.* "Deliberate indifference requires that the defendant's conduct is in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow or that the conduct disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." *Id.* at 1175-76 (internal quotations omitted).

Here, Plaintiff alleges that in the hours after he broke his hip, Defendants Merrill and Diaz forcibly changed his prison clothes into an orange jumpsuit, jammed an orange boot on his right foot (he broke his right hip), and transported Plaintiff to Sterling and Denver hospitals by putting him in a wheelchair handcuffed and sitting straight up, and driving over bumpy roads, causing Plaintiff severe pain. Docket #31-1 at 7-8. Plaintiff contends that he should have been transported in an

ambulance like "any normal citizen." *Id.*

The Court finds that Plaintiff has failed to allege plausibly the subjective component of his Eighth Amendment claim against Defendants Merrill and Diaz. There are no allegations concerning any requirement that prison transportation officials must transport injured inmates by some method other than by wheelchair. There are no allegations that Merrill and Diaz were instructed by medical staff (or by anyone) to transport Plaintiff in any way other than by wheelchair, and disregarded such instruction. There are no allegations that Merrill and Diaz were instructed not to change the Plaintiff's clothes or place the boot on his foot, or to do so in any method other than how they performed these activities. There are no allegations that Plaintiff suffered any worse injury than his already broken hip as a result of the clothes change, boot or transportation; in fact, the surgical report reflects that Plaintiff came through the procedure the following day successfully. As for the pain he experienced, the Tenth Circuit has held that an Eighth Amendment inquiry "turns not only on the severity of the alleged deprivations, but also on their duration." *Bainum v. Sedgwick Cnty. Comm'rs*, 27 F. App'x 965, 969 (10th Cir. 2001) (citing *DeSpain*, 264 F.3d at 973 (prisoners exposed to filthy cells, poor lighting, inadequate ventilation or air cooling and unappetizing food for a period of forty-eight hours did not rise to the level of a constitutional violation)). Thus, although Plaintiff's pain may have been severe, it allegedly occurred over the course of only a few hours during transportation between the prison facility, the Sterling hospital and the Denver hospital. Finally, the fact that Plaintiff asserts he should have been transported in an ambulance is not persuasive. *See Perkins v. Kansas Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999) ("a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation.").

Therefore, the Court recommends finding that Plaintiff has failed to state an Eighth Amendment violation in Claim Three by insufficiently alleging the subjective component necessary

to demonstrate a violation of his Eighth Amendment right.

### 3.   *Due Process Violations*

To the extent that the District Court find Plaintiff has adequately stated personal participation by Defendants Dowis, Frantz, Ficus and Brooks for the due process portion of Claim One and/or by Defendant Milyard for the due process portion of Claim Three, the Court will proceed to analyze whether Plaintiff states plausible claims for violations of the due process clause of the Fourteenth Amendment.

### a.   Claim One: Failure to Follow Policy

Although vague, it appears that Plaintiff alleges Defendants Dowis, Frantz, Ficus and Brooks failed to follow Administrative Regulation (AR) 1550-10, Food Handlers Certificates and Hygiene Practices, in assigning the Plaintiff to work full-time in the kitchen.  Specifically, citing what appears to be AR 1550-10(IV)(A)(3)(f), the Plaintiff alleges "Food Service Supervisor(s) Ficus and Brooks was [sic] responsible for monitoring the plaintiffs [sic] records for "Food Handlers Certificates" and "Dowis, Frantz, Brooks and Ficus must be (f) 'attentive to Food Service and food processing working environment ... .'"  There is no allegation that the regulation itself caused the Plaintiff any injuries.

"A failure to adhere to administrative regulations does not equate to a constitutional violation." *Coppinger v. Zavares*, 429 F. App'x 755, 756 (10th Cir. July 11, 2011) (quoting *Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993)) (upheld district court's dismissal of due process claims challenging defendants' alleged failure to follow administrative regulations). Plaintiff's sole due process claim stated in Claim One appears to challenge the alleged failure of Defendants Dowis, Frantz, Brooks and Ficus to follow AR 1550-10; thus, the Court respectfully recommends that the District Court find Plaintiff has failed to state in Claim One a violation of the due process clause.

b.      Claim Three: Regulation Violates Due Process

It is possible that, by most liberally construing the Plaintiff's Amended Complaint and scrutinizing the attached documents, the Plaintiff may be alleging a claim that AR 850-03(IV)(A)(1), implemented by Defendant Milyard, violates a due process right to be free from re-taking classes already taken in a program outside of the prison system.   The challenged regulation states:

> The DOC requires all eligible offenders to work unless assigned to an approved education or training program.   Offenders have the option of refusing to participate in any rehabilitation or treatment program except adult basic education and programs required by statute or ordered by the sentencing court or paroling authority.

AR 850-03(IV)(A)(1), docket #1 at 81.

"The Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property, without due process of law .'" *Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1339 (10th Cir. 2007) (quoting U.S. Const. Amend. XIV).   "A due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (citation omitted).   The Tenth Circuit Court of Appeals has ruled that property interest and liberty interest claims by prisoners are "to be reviewed under *Sandin*'s atypical-and-significant-deprivation analysis." *Steffey,* 461 F.3d at 1221 (citing *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999) (other citations omitted)).   "The Supreme Court mandate since *Sandin* is that henceforth we are to review property and liberty interest claims arising from prison conditions by asking whether the prison condition complained of presents 'the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest.' " *Cosco*, 195 F.3d at 1224 (alteration in original, quoting *Sandin v. Conner*, 515 U.S. 472, 486 (1995)).

"[T]he touchstone of the inquiry ... is not the language of regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of

prison life." *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (internal quotation marks and citation omitted). Whether confinement "conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination ... ." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir.1997) (citing *Sandin*, 515 U.S. at 485-87).

Here, the Plaintiff does not appear to challenge either his security classification or placement, for which he has no liberty interest (*see See Hewitt v. Helms*, 459 U.S. 460, 468 (1983); *Meachum v. Fano*, 427 U.S. 215, 228 (1976)), nor does he claim deprivation of a benefit or program through the CDOC. Rather, he appears to claim a liberty interest in the right to be free from participating in a CDOC educational program, or from the requirement to take classes he has already taken or feels he does not need. The Plaintiff cites no case law supporting the existence or validity of such liberty interest, and the Court could find none. More importantly, however, the Plaintiff fails to allege, in any way, how the requirement to take classes he has already taken (or that are meant to be taken in the pursuit of a GED) impose an "atypical and significant hardship," in relation to the ordinary incidents of prison life, for which a liberty interest would be created. As such, the Court recommends that the District Court find the Plaintiff has failed to state a liberty interest sufficient to support a due process claim against Defendant Milyard.

    B.    <u>Statutory Violation</u>

For his Claim Two, the Plaintiff asserts violations of Title II of the Americans with Disabilities Act ("ADA") and of the Rehabilitation Act against Defendants Holst and Dowis for "clearly discriminat[ing] against Plaintiff Meek for not following Dr. Susan Tiona [sic] prescribed orders on 12/27/06 - 12/27/07 for an extra mattress, and from 1/18/07 - 1/18/08 [for a wedge pillow], and for a back brace, from 2/1/07 - 2/1/08." Docket #31-1 at 3.[4] Defendants counter that Plaintiff's

---

    [4]The Court notes that Plaintiff also mentions "8th Amendment-Cruel and Unusual Punishment" in the title of the claim and vaguely asserts that Defendants "disregarded a substantial

claim is barred by the statute of limitations.[3]  The Court agrees.

"Colorado's general two-year statute of limitations, Colo. Rev. Stat. § 13-80-102, applies to actions arising under Title II of the ADA."  *Hughes v. Colorado Dep't of Corrs.*, 594 F. Supp. 2d 1226, 1235 (D. Colo. 2009) (citing *Quinn v. Univ. of Okla.,* 276 F. App'x 809, 810 (10th Cir. 2008) (unpublished) (affirming grant of summary judgment against plaintiff on claims brought under Title II of the ADA based on two-year limitations period)).  "In general, ... claims accrue and the statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action."  *Id.* (quoting *Alexander v. Oklahoma,* 382 F.3d 1206, 1215 (10th Cir. 2004)).  "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence."  *Id.* (quoting *Indus. Constructors Corp. v. U.S. Bureau of Reclamation,* 15 F.3d 963, 969 (10th Cir. 1994)).  Although the statute of limitations is an affirmative defense, the issue may be resolved on a motion to dismiss where the application of the limitations period is apparent on the face of the complaint.  *Id.* (citing *Dummar v. Lummis,* 543 F.3d 614, 619 (10th Cir. 2008)).

Here, Plaintiff alleges that, upon his arrival at the Sterling Correctional Facility on February 22, 2007, Defendants Holst and Dowis denied his requests for an extra mattress, wedge pillow and back brace, which had been prescribed by Dr. Susan Tiona at his previous facility.  In support of this claim, the Plaintiff provides copies of his grievances and the CDOC's responses dated between March and May 2007.  *See* Exhibits 6, 8 and 9, docket #1 at 57-60, 66-70.  Clearly, by his

---

risk of harm to my broken back and to my safety by acting with deliberate indifference to my serious medical needs."  Docket #31-1 at 5.  However, just as Title II of the ADA is subject to a two-year statute of limitations, so too is a constitutional claim brought in Colorado pursuant to 42 U.S.C. § 1983.  *See Blake v. Dickason*, 997 F.2d 749, 750-51 (10th Cir. 1993).

[3]The Defendants also raise defenses concerning Title I of the ADA regarding discrimination in employment.  Clearly, the Plaintiff does not raise such claim, and it would be inapplicable to the factual allegations supporting Plaintiff's Claim Two.

grievances, the Plaintiff knew or should have known of the claimed injuries as early as March 2007; however, he initiated the present action on October 31, 2011. The Plaintiff makes no allegations that he was prohibited in some way from filing his lawsuit within two years after learning of his injuries.

The Court notes that Plaintiff attaches a response to a Step 3 grievance dated April 8, 2010 concerning a back brace. Docket #1 at 77. However, the response appears to imply that Plaintiff's back brace had been recently removed by medical staff,[4] was misplaced, then re-ordered and given back to the Plaintiff. *Id.* Thus, this particular grievance response does not appear to be related to the claims made in Claim Two of this action.

Therefore, from the face of the Amended Complaint, the Court concludes that Plaintiff's Claim Two is barred by the two-year statute of limitations, and recommends that the District Court grant Defendants' motion to dismiss Claim Two.

Because the Court concludes that Plaintiff has failed to state plausible constitutional and statutory claims in this case, the Court need not proceed with an analysis as to whether Plaintiff's rights were clearly established. Rather, the Court recommends finding that the individual Defendants are entitled to qualified immunity from the Plaintiff's claims in this case and that the Defendants' motion to dismiss be granted.

## II.     Leave to Amend

Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice. *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1359 (10th Cir. 1989). As such, in this jurisdiction, the Court typically does not dismiss a claim under Rule 12(b)(6) until the plaintiff has

---

[4]This would be consistent with another grievance response provided by the Plaintiff dated May 7, 2007 stating that "on March 6, 2007, a SCF medical provider ... granted you permission to wear a back brace." Docket #1 at 59.

been provided notice and an opportunity to amend the complaint to cure the defective allegations. *See Bellmon*, 935 F.2d at 1109-10.

Here, this is the second action filed by the Plaintiff concerning the same or similar matters. *See Meek v. Ficus*, 11-cv-00869-MSK-MEH. In the previous action, the Plaintiff filed an original complaint, then three amended complaints upon the orders of the Court. *Id.*, dockets #1, #8, #15, #20. The action was dismissed upon the Plaintiff's motion. *Id.*, dockets #47, #48. In the present case, the Plaintiff filed an original complaint on October 31, 2011, then filed the operative Amended Complaint on January 27, 2012. Thus, the Plaintiff has had a number of opportunities to cure any defective allegations in this matter.

Furthermore, it does not appear that the Plaintiff may cure the deficiencies raised in the present motion. With respect to his Eighth Amendment claims, the factual allegations underlying Claim One do not support the required objective component of an Eighth Amendment claim in that they fail to describe special or unique circumstances taking the claim beyond a regular "slip and fall" case. Likewise, in Claim Three, the Plaintiff's allegations do not meet the necessary subjective component in that they fail to describe that the Defendants were instructed or knew to do something different than they did. Plaintiff's due process allegation in Claim One is based upon a failure to follow a regulation, which does not rise to the level of a constitutional claim, and the due process allegations in Claim Three fails because he does not state a liberty interest in being free from the requirement to take certain classes; no additional factual allegations will cure such defects. With respect to Claim Two, the limitations bar is apparent on the face of the Amended Complaint, and no additional allegations will change the fact that Plaintiff knew he suffered an "injury" in March 2007 when he filed a grievance. The Plaintiff asserts in his response to the present motion that he needs discovery to cure these deficiencies, but he does not describe what he is looking for nor how any additional information will assist in stating plausible constitutional and/or statutory claims.

Consequently, because it is highly unlikely that a "seventh" opportunity to amend may cure the current defects in the Plaintiff's Amended Complaint, the Court recommends that the Plaintiff be denied another opportunity to amend his pleading in this matter.

## **CONCLUSION**

Accordingly, for the reasons stated herein, the Court respectfully RECOMMENDS that the District Court **grant** Defendants' Motion to Dismiss [filed February 21, 2012; docket #39] the operative Amended Complaint, and deny the Plaintiff leave to file a Second Amended Complaint.

Respectfully submitted at Denver, Colorado, this 26th day of April, 2012.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge